**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Joann Johnson, | No. CV 08-1894-PHX-JAT |
| Plaintiff, | **ORDER** |
| vs. | |
| Teltara, LLC, | |
| Defendant. | |

Before the Court is Defendant Teltara's Motion for Summary Judgment. (Doc. #35). For the reasons cited herein, the Court grants the motion.

**I.   Background**

On April 1, 2007, Defendant Teltara ("Defendant") took over as the subcontractor providing janitorial services at a hospital on Luke Air Force Base. (Defendant's Statement of Facts, Doc. #36, ¶1). At this time, Plaintiff Joann Johnson ("Ms. Johnson") was employed as a housekeeper at the hospital. (Plaintiff's First Amended Complaint, Doc. #25, ¶11); (Doc. #36, ¶2). When Teltara became the subcontractor, Linda Seykora ("Ms. Seykora") became the Housekeeping Manager in charge of the hospital that Ms. Johnson cleaned. (Doc. #36, ¶5). Teltara initially retained all the housekeepers employed by the previous subcontractor, including Ms. Johnson. (*Id.* at ¶2). Of those housekeepers, only Ms. Johnson is African-American. (*Id.* at ¶¶18-19). The other housekeepers are Hispanic or Asian. (*Id.* at ¶19).

1    Upon taking charge of the housekeepers at the hospital, Ms. Seykora changed the responsibilities, schedules and hours of the housekeepers. (*Id.* at ¶21). Ms. Seykora claims that she reduced the hours of each housekeeper. (*Id.* at Exhibit 1, ¶13). Ms. Johnson claims that Ms. Seykora reduced the hours of each housekeeper except for Margarita Enriquez, the shift leader. (*Id.* at Exhibit 5, p. 28). Specifically, Ms. Seykora changed the start time of Ms. Johnson's shift from 3:30 PM to either 4:00 or 4:30 PM. (*Id.* at ¶23). Ms. Seykora also transferred the responsibility of cleaning the Records and Pharmacy areas of the hospital away from Ms. Johnson, who worked the night shift, to another housekeeper who worked the day shift because these areas needed to be cleaned by 5:00 PM. (*Id.* at ¶24). Ms. Seykora gave the responsibility of cleaning the windows to Ms. Johnson. (*Id.* at Exhibit 5, p. 35, 83). Ms. Johnson considered the responsibility of cleaning windows to be "lower to me." (*Id.* at Exhibit 5, p. 83).

On April 2, 2007, Ms. Johnson confronted her shift leader, Margarita Enriquez, about the housekeepers' reduced hours. (*Id.* at ¶27). Ms. Johnson used foul language and acted belligerently towards Ms. Enriquez and Ms. Enriquez reported this behavior to Ms. Seykora. (*Id.* at ¶¶27-29).[1] Ms. Seykora then met with Ms. Johnson and Ms. Johnson again became belligerent. (*Id.* at ¶¶30-32).

On the morning of April 3, 2007, a Facility Manager at the hospital named Michael Perna discovered that the door in the dental area of the hospital leading directly outside had not been closed all the way. (*Id.* at ¶44). Mr. Perna reviewed a surveillance recording and discovered that Ms. Johnson had propped a rug in the door and left it open for 20-25 minutes on the previous night. (*Id.* at ¶¶45, 49). Ms. Johnson appeared to be taking an unauthorized

---

[1] This seems to be hearsay evidence as it appears in Ms. Seykora's affidavit, not Ms. Enriquez's report. However, in this Circuit, the district court must consider even inadmissible evidence at the summary judgment phase of the proceedings unless a party has moved to strike the evidence or has otherwise objected to it. *See Pfingston v. Ronan Engr. Co.* 284 F.3d 999, 1003 (9th Cir. 2002) ("In order to preserve a hearsay objection, a party must either move to strike the affidavit or otherwise lodge an objection with the district court.").

break during this time. (*Id.* at ¶45). When Ms. Johnson removed the rug to shut the door, she did not ensure that the door closed all the way and locked. (*Id.* at ¶45). Another employee named Sun Ok also took an unauthorized break at this time. (*Id.* at ¶52). Sun Ok received a verbal warning about the unauthorized break. (*Id.* at ¶53).

On the same day, Ms. Johnson reported that she had worked from 4:00 PM to 1:00 AM. (*Id.* at ¶¶35, 37). However, Ms. Enriquez noted that Ms. Johnson left work at 10:30 PM and did not return until 1:00 AM. (*Id.* at ¶¶36-37). Ms. Seykora gave Ms. Johnson a verbal warning about this incident. (*Id.* at ¶39).

On April 4, 2007, Ms. Johnson allegedly asked military personnel to let her into the hospital because she did not have her ID Badge. (*Id.* at ¶57). Ms. Johnson knows that she must have a security badge to access the hospital. (*Id.* at Exhibit 5, p. 16). She acknowledges using Ms. Enriquez's badge to leave the facility, but denies asking military personnel to help her gain access to the facility. (*Id.* at Exhibit 5, pp. 67-74).

On April 5, 2007, Ms. Seykora terminated Ms. Johnson's employment. (*Id.* at ¶60). Ms. Seykora told Ms. Johnson that the reasons for her termination included propping open a door in the dental area, which posed a security threat, and taking unauthorized breaks. (*Id.* at Exhibit 3). Ms. Johnson became belligerent and left the office before Ms. Seykora could tell her the other reasons for her termination. (*Id.* at Exhibit 3). Ms. Enriquez, who was present at the termination, contends that the other reasons for Ms. Johnson's termination were Ms. Johnson's failure to use an ID badge to enter and exit the hospital and use of derogatory language at work. (*Id.* at Exhibit 3).

Ms. Johnson alleges that Ms. Seykora terminated her because she is an African American woman. (Doc. #25 at ¶14); (Plaintiff's Response to Defendant's Motion for Summary Judgment, Doc. #39 at ¶3). Ms. Johnson further contends that Ms. Seykora treated her differently than other employees by changing her hours and responsibilities. (Doc. #39 at ¶2). Ms. Johnson says that none of the reasons provided by Ms. Seykora and the Defendant are grounds for termination according to the "union collective bargain hand book." (*Id.* at ¶4). Instead, Ms. Johnson argues that she was terminated as retaliation for

asserting her seniority and disagreeing with her reduced hours. (*Id.* at ¶7).

Ms. Johnson filed a grievance with the EEOC and received a Right to Sue Notice. (Doc. #25 at ¶¶18-19). She filed a complaint with this Court on August 11, 2009. (Doc. #25). Defendant moved for summary judgment pursuant to Fed. R. Civ. P. 56 on May 17, 2010. (Doc. #35).

## II. Legal Standard

Summary judgment must be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). Thus, summary judgment is mandated ". . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In the summary judgment context, the Court construes all disputed facts in the light most favorable to the non-moving party. *Ellison v. Robertson*, 357 F.3d 1072, 1075 (9th Cir. 2004).

Initially, the movant bears the burden of pointing out to the Court the basis for the motion and the elements of the causes of action upon which the non-movant will be unable to establish a genuine issue of material fact. *Id.* at 323. The burden then shifts to the non-movant to establish the existence of a genuine issue of material fact. *Id.* The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts" by "com[ing] forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (quoting Fed. R. Civ. P. 56(e)(2)). A dispute about a fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, courts have refused to find a "genuine issue" of material fact where the only evidence presented is "uncorroborated and self-serving" testimony. *Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1481 (9th Cir. 1996). The non-movant's bare assertions, standing alone, are insufficient to create a material issue of fact

- 4 -

1  and defeat a motion for summary judgment. *Liberty Lobby, Inc.*, 477 U.S. at 247-48.

## III. Analysis

Ms. Johnson brings claims against Defendant for race discrimination under Title VII, race discrimination under 42 U.S.C. § 1981, and Intentional Infliction of Emotional Distress. She asserts that Defendant is responsible for Ms. Seykora's actions under the theory of *respondeat superior* because Defendant employed Ms. Seykora at the time of the allegations. (*Id.* at ¶8). Defendant moves for summary judgment, under Fed. R. Civ. P. 56, on all three claims.

### A. Title VII

Title VII of the Civil Rights Act of 1964 prohibits employment discrimination on the basis of race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a). To prevail on a Title VII claim, the plaintiff must prove that an adverse employment action was taken "because of" unlawful discrimination. *Costa v. Desert Palace, Inc.*, 299 F.3d 838, 857 (9th Cir. 2002). Title VII disparate-treatment claims like Ms. Johnson's, "require the plaintiff to prove that the employer acted with conscious intent to discriminate." *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 805-806 (1973). Courts employ a burden-shifting analysis for Title VII claims:

> [T]he plaintiff must establish a prima facie case of discrimination. If the plaintiff succeeds in doing so, then the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its allegedly discriminatory conduct. If the defendant provides such a reason, the burden shifts back to the plaintiff to show that the employer's reason is a pretext for discrimination.

*Vasquez v. Cnty. of L.A.*, 349 F.3d 634, 640 (9th Cir. 2004) (quoting *McDonnell Douglas Corp.*, 411 U.S. at 802-805). At the summary judgment stage, the plaintiff does not have to prove that the employer's reason for firing her was pretext for discrimination, but the plaintiff must introduce evidence sufficient to raise a genuine issue of material fact as to whether the employer's reason was pretextual. *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1282 (9th Cir. 2000).

Here, Ms. Johnson has alleged a prima facie case as to her claims that Ms. Seykora

reduced her hours and terminated her on the basis of her race. However, Defendant has provided non-discriminatory explanations as to why Ms. Seykora reduced Ms. Johnson's hours and terminated her employment. Ms. Johnson has not introduced evidence raising an issue of material fact as to whether Defendant's explanations are pretextual. Thus, the Court grants summary judgment to Defendant on Ms. Johnson's claim of Title VII race discrimination.

### 1. Prima Facie Case

To prove a prima facie case of race discrimination based on disparate treatment, Ms. Johnson must allege: (1) she is a member of a protected class; (2) she was qualified for her position; (3) she experienced an adverse employment action; and (4) similarly situated individuals outside her protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination.[2] *Jones v. Wal-Mart Stores, Inc.*, 2009 WL 2382435, *6 (D. Ariz. 2009) (J. McNamee) (citing *McDonnell Douglas Corp.*, 411 U.S. at 802). If such evidence is alleged, it supports a reasonable inference that Ms. Seykora intentionally discriminated against Ms. Johnson on the basis of her race, notwithstanding Defendant's own explanation of the events. *See Tex. Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981). As set forth below, Ms. Johnson has established a prima facie case against Defendant on her claims of a) disparate treatment regarding her reduced hours and b) disparate treatment regarding her termination. She has not established a prima facie case on her claims that Ms. Seykora failed to account for her seniority, disparate treatment regarding her changed responsibilities, retaliation and hostile work environment.

### a. Failure to Account for Ms. Johnson's Seniority

Ms. Johnson alleges that Ms. Seykora discriminated against her based on race by reducing her hours and changing her responsibilities without regard to her seniority. (Doc.

---

[2]It is undisputed that Ms. Johnson is a member of a protected class and that she was qualified for her position.

#36 at Exhibit 5, pp. 35-36, 58-60, 83); (Doc. #25 at ¶22). As a preliminary matter, the Court finds no evidence of any seniority policy.

Ms. Johnson testified at her deposition that Ms. Seykora reduced her hours. (Doc. #36 at Exhibit 5, p. 36). She asserted that any reductions to employees' hours should have been made by seniority. (*Id.* at Exhibit 5, p. 60). She implied that Ms. Seykora did not reduce the hours of another employee who had worked at the hospital for only 4 years but instead reduced Ms. Johnson's hours even though she had worked at the hospital for 17 years. (*Id.*). Ms. Johnson also testified that Ms. Seykora took away some of her old responsibilities and instead made Ms. Johnson clean the windows. (*Id.* at Exhibit 5, pp. 35, 83). Ms. Johnson considered cleaning windows to be below her level of seniority. (*Id.*). Ms. Johnson testified that she believed her union required seniority rules as laid out in the "union collective bargain hand book," and that the new subcontractor would abide by those rules. (*Id.* at Exhibit 5, pp. 58-59); (Doc. #39 at ¶4). Ms. Johnson alleges that, since she is the only African American housekeeper, Ms. Seykora must be discriminating against her because of her race. (Doc. #36 at Exhibit 5, pp. 58-59).

Ms. Johnson has not introduced the "union collective bargain hand book" into evidence, *see* Doc. #39 at ¶4, nor has she presented any admissible evidence regarding the union seniority policy. Without such evidence, the Court cannot determine whether Defendant contravened that policy, or even whether such a policy exists. The Court does not find that the alleged handbook creates an issue of material fact because the only evidence that such a handbook even exists is uncorroborated, self-serving testimony. *See Liberty Lobby, Inc.*, 477 U.S. at 247-48; *Kennedy*, 90 F.3d at 1481. Therefore, Ms. Johnson has not established a prima facie case based on Defendant's alleged failure to account for her seniority when reducing employees' hours.

### b. Reduced Hours and Changed Responsibilities

Even if no seniority policy exists, Ms. Seykora could have reduced Ms. Johnson's hours and changed her responsibilities based on her race. The Court finds that Ms. Johnson has established a prima facie case against Defendant for reducing her hours based on her

race, but that Ms. Johnson has not established a prima facie case against Defendant for changing her responsibilities.

Ms. Johnson has alleged that Ms. Seykora reduced her hours while not reducing at least one other non-African American employee's hours. (Doc. #36 at Exhibit 5, p. 60). Ms. Johnson has further implied that she has more experience than this non-African American employee. (*Id.*). Ms. Johnson has therefore alleged that Ms. Seykora treated similarly situated individuals outside her protected class more favorably. *See Jones*, 2009 WL 2382435 at *6. This allegation, without Defendant's explanation, does support the inference that Ms. Seykora intentionally reduced Ms. Johnson's hours based on her race. *See Tex. Dept. of Cmty. Affairs*, 450 U.S. at 254. Therefore, Ms. Johnson has established a prima facie case based on Ms. Seykora's allegedly discriminatory reduction of Ms. Jonhson's hours.

Ms. Johnson has also alleged that Ms. Seykora gave her the less desirable responsibility of cleaning windows because of her race. (*Id.* at Exhibit 5, pp. 35, 83). But there is no evidence in the record that cleaning windows is actually less desirable than cleaning the Records or Pharmacy areas. Nor is it apparent to the Court why cleaning the windows would be any less desirable than cleaning any other part of the hospital. Ms. Johnson's bare assertion that cleaning windows is less desirable fails to create a genuine issue of material fact as to whether changing her responsibilities constituted an adverse employment action. *See Liberty Lobby, Inc.*, 477 U.S. at 247-48; *Kennedy*, 90 F.3d at 1481. The Court cannot therefore find that this change in responsibilities is an adverse employment action. *See Costa*, 299 F.3d at 857; *Jones*, 2009 WL 2382435 at *6. Thus, Ms. Johnson has not alleged a prima facie case of race discrimination based on her changed job responsibilities.

### c. Wrongful Termination

Ms. Johnson alleges that she was wrongfully terminated on the basis of her race. (Doc. #25 at ¶22). Ms. Johnson has established a prima facie case of wrongful termination based on race.

Wrongful termination based on race can also be shown by alleging that an employer treated similarly situated individuals outside the plaintiff's protected class more favorably. *Bencivenga v. Gonzales*, 130 Fed. Appx. 116, 117 (9th Cir. 2005). To show racial discrimination was present in a wrongful termination, "[i]t is sufficient to show that discrimination made a difference between retention and discharge." *Mitchell v. Keith*, 752 F.2d 385, 391 (9th Cir. 1985).

As evidence of her wrongful termination claim, Ms. Johnson points to the fact that she was fired for taking an unauthorized break while another non-African American employee, Sun Ok, received only a warning for the same offense. (Doc. #36 at Exhibit 5, p. 83). She also claims that Ms. Enriquez made false statements about her that caused her to be fired. (*Id.* at Exhibit 5, p. 84). These allegations, notwithstanding Defendant's explanations, support the inference that Ms. Seykora wrongfully terminated Ms. Johnson's employment based on her race. *See Tex. Dept. of Cmty. Affairs*, 450 U.S. at 254. Therefore, Ms. Johnson has established a prima facie case of wrongful termination based on race discrimination.[3]

### d. Retaliation

Ms. Johnson also contends that Ms. Seykora terminated her as retaliation for asserting her seniority and disagreeing with her reduced hours. (Doc. #39 at ¶7). However, Ms. Johnson has not shown that Ms. Seykora retaliated against her for asserting her rights under Title VII.

Title VII makes it unlawful for an employer "to discriminate against any of his employees ... because [she] has opposed any practice made an unlawful employment practice by this subchapter, or because [she] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. §

---

[3] Ms. Johnson also contends that Ms. Seykora fired her without regards to the grounds for termination laid out in the "union collective bargain hand book." (Doc. #39 at ¶4). However, Ms. Johnson has not introduced the "union collective bargain hand book" into evidence, nor has she presented any admissible evidence regarding the handbook's termination policies. The Court therefore cannot rely on this allegation to support Ms. Johnson's prima facie case of wrongful termination. *See Kennedy*, 90 F.3d at 1481.

2000e-3(a). To make a prima facie case of retaliation, Ms. Johnson must show that "(1) [she] engaged in a protected activity; (2) [her] employer subjected [her] to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse action." *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000); *see also Steiner v. Showboat Operating Co.*, 25 F.3d 1459, 1464 (9th Cir. 1994).

Here, Ms. Johnson presented no evidence that she confronted Ms. Seykora, or anyone else, with a claim that she was being discriminated against on account of her race in violation of Title VII. Thus, she has not shown that she engaged in a protected activity. *See Ray*, 217 F.3d at 1240. Rather, she approached Ms. Enriquez and Ms. Seykora about her hours being reduced and her responsibilities being changed. (Doc. #36 at ¶¶27-32). Ms. Johnson's allegation of race discrimination appears to have surfaced only after Ms. Johnson was terminated. Therefore, Ms. Johnson has not established a prima facie case that Ms. Seykora retaliated against her for opposing Ms. Seykora's alleged race discrimination.

### e.     Hostile Work Environment

Ms. Johnson alleges that, before her termination, Ms. Seykora's discrimination "made [her] work environment hostile, intimidating and intolerable." (Doc. #25 at ¶15). Ms. Johnson has not shown that Ms. Seykora's conduct was based on race or that it was sufficiently severe or pervasive.

Hostile work environment claims based on racial harassment are reviewed under the same standard as those based on sexual harassment. *McGinest v. GTE Service Corp.*, 360 F.3d 1103, 1115 (9th Cir. 2004). The Ninth Circuit set forth a three-factor test to determine whether a working environment is "hostile" within the meaning of Title VII. *Jordan v. Clark*, 847 F.2d 1368, 1373 (9th Cir. 1988) (concerning sexually-hostile work environments). Under this test, the plaintiff must show that: (1) she was subjected to verbal or physical conduct based on her membership in a protected class; (2) the conduct was unwelcome; and (3) the conduct was sufficiently severe or pervasive to alter the conditions of his employment and create an abusive working environment. *Id.*

To support this claim, Ms. Johnson testified at her deposition that Ms. Seykora called

her early in the morning to reduce her hours, changed her responsibilities, watched her on the security cameras and constantly stood at her workplace and picked on her. (Doc. #36 at Exhibit 5, pp. 79, 83). Ms. Johnson testified that "[Ms. Seykora] was pointing on me. Every time I turn around, Linda right in my area." (*Id.*). She testified that she "could hear the yelling and screaming. . . it was awful." (*Id.* at Exhibit 5, p. 81). She further testified that "I'm the only black there and I'm the only one she was picking on." (*Id.* at Exhibit 5, p. 79).

However, at Ms. Johnson's deposition the following testimony was elicited:

> Q: So is there any evidence that you have that shows that [Ms. Seykora] treated you differently because you were African American?
>
> A: No, she never called me out a name, no. Just them two days. All I know is two days and it was horrible. (sic).

(*Id.* at Exhibit 5, p. 81). This testimony suggests that Ms. Seykora's alleged conduct was not based on her membership in a protected class. *See Jordan*, 847 F.2d at 1373. Ms. Johnson further testified that Ms. Seykora was not with her eight hours a day, and likely checked on the other employees. (Doc. #36 at Exhibit 5, pp. 80-81). This testimony contravenes the allegation that Ms. Johnson was the only one that Ms. Seykora was picking on.

Furthermore, Ms. Johnson admitted that Ms. Seykora only called her at 7:00 AM once. (*Id.* at Exhibit 5, p. 81). One early morning phone call can hardly be characterized as severe or pervasive. *See e.g. Hotchkins v. Fleet Delivery Serv.*, 25 F. Supp. 2d 1141, 1149 (D. Or. 1998) (single racial epithet insufficient to show pervasive race discrimination). Additionally, Ms. Johnson has not alleged that Ms. Seykora called only her and not all the housekeepers. To the contrary, it is likely that Ms. Seykora did call each housekeeper since she changed each housekeeper's responsibilities. (Doc. #36 at Exhibit 1, ¶13).

Finally, Ms. Johnson has presented no authority stating that an employer creates an abusive working environment simply by monitoring employees with security cameras. *See contra Singleton v. Dept. of Correctional Educ.*, 115 Fed.Appx. 119, 120-123 (4th Cir. 2004) (finding that plaintiff being watched on security camera was not severe and pervasive); *Toth v. Ohio Dept. of Youth Serv.*, 754 N.E.2d 305, 312 (Oh. Ct. Cl. 2001) (finding that plaintiff being watched on security camera was not an adverse employment action). To the contrary,

employers must be able to review their employees' work, especially here where Teltara told all employees that had previously worked at the hospital that they were on a 90-day probationary period. (Doc. #36 at Exhibit 3). Furthermore, Ms. Johnson has presented no evidence that Ms. Seykora watched only her on the security cameras and not the other employees. Therefore, Ms. Seykora watching Ms. Johnson work on a security camera is neither severe, pervasive nor based on Ms. Johnson's race.

Ms. Johnson has not alleged that Ms. Seykora created a hostile work environment for Ms. Johnson based on Ms. Johnson's race or that Ms. Seykora's conduct was sufficiently severe or pervasive. *See Jordan*, 847 F.2d at 1373. Thus, Ms. Johnson has not established a prima facie case of hostile work environment under Title VII.

### 2. **Defendant's Non-Discriminatory Explanations**

Since Ms. Johnson has established a prima facie case on her claims of disparate treatment regarding her reduced hours and disparate treatment regarding her termination, the burden shifts to Defendant to show non-discriminatory explanations for the alleged conduct. *See Vasquez*, 349 F.3d at 640. Here, Defendant has shown non-discriminatory explanations for both of Ms. Johnson's remaining claims.

#### a. **Reduced Hours**

Defendant has offered evidence that Ms. Seykora reduced every employee's hours, thus rebutting Ms. Johnson's claim that Ms. Seykora reduced her hours based only on her race.

Ms. Seykora stated in her affidavit that she reduced the hours of each housekeeping employee, and changed every employee's responsibilities, to increase efficiency. (Doc. #36 at ¶21); (*Id.* at Exhibit 1, ¶13). Specifically, she said she changed the start of the night shift from 3:30 PM to 4:00 PM. (*Id.* at Exhibit 1, ¶14). Ms. Seykora claims that she transferred the responsibility of cleaning the Records and Pharmacy areas away from Ms. Johnson, who worked the night shift, because these areas had to be cleaned by 5:00 PM. (*Id.* at ¶24). She transferred those responsibilities to a housekeeper on the day shift. (*Id.*).

Defendant's explanation raises an issue of fact as to whether one employee's hours

- 12 -

were reduced. Ms. Seykora claims she reduced hours of each employee. (*Id.* at ¶21). Ms. Johnson claimed at her deposition that Ms. Seykora did not reduce the hours of one less-experienced employee. (*Id.* at Exhibit 5, p. 60) ("Don't just cut the 17-year old [employee's hours] and let the 4-year old girl do eight [hours]."). Although the Court must construe this disputed fact in the light most favorable to Ms. Johnson for purposes of summary judgment, the Court finds it is not an issue of "material fact." *See Liberty Lobby, Inc.*, 477 U.S. at 248; *Ellison*, 357 F.3d at 1075. Ms. Seykora reduced the hours of at least six non-African American housekeepers. (Doc. #36 at Exhibit 1, ¶11). Thus, Defendant has rebutted the claim that Ms. Seykora treated similarly situated individuals outside her protected class more favorably. *See Bencivenga*, 130 Fed. Appx. at 117. Whether Ms. Seykora reduced a seventh housekeeper's hours is immaterial.[4] Therefore, Defendant has provided a non-discriminatory explanation for changing Ms. Johnson's hours and the burden shifts back to Ms. Johnson to show that this explanation is merely pretext for discriminatory behavior. *See Vasquez*, 349 F.3d at 640.

### b. Wrongful Termination

Defendant has offered evidence rebutting Ms. Johnson's allegation that a non-African American housekeeper received only a warning for taking an unauthorized break while she was fired.

In her affidavit, Ms. Seykora stated that Sun Ok received only a verbal warning for taking an unauthorized break because it was Sun Ok's first offense. (Doc. #36 at ¶53). Additionally, the unauthorized break was not the only reason that Defendant terminated Ms. Johnson. Defendant has introduced evidence that the main reason Defendant fired Ms.

---

[4]Although it is not entirely clear from Ms. Johnson's deposition, she seems to allege that Ms. Enriquez was the less experienced employee whose hours were not reduced. (Doc. #36 at Exhibit 5, pp. 28, 60). Ms. Enriquez was the shift manager. (*Id.* at Exhibit 5, p. 28); (*Id.* at Exhibit 1, ¶12). As the shift manager, Ms. Enriquez was not similarly situated to Ms. Johnson. Thus, even if the issue of whether Ms. Seykora reduced Ms. Enriquez's hours was material, Ms. Seykora did not treat *similarly situated* individuals outside Ms. Johnson's protected class differently. *See Bencivenga*, 130 Fed. Appx. at 117.

Johnson was for propping open a door to the outside and failing to close it when she left, both in violation of the hospital's security protocol. (*Id.* at Exhibit 3). Ms. Seykora explained that Sun Ok had nothing to do with these violations. (*Id.* at ¶54). Defendant has introduced evidence that the other reasons for Ms. Johnson's termination were her failure to acquire an ID badge, asking someone else to use their ID badge to help her gain access to the facility, and using derogatory language towards management. (*Id.* at Exhibit 3). This evidence provides a non-discriminatory explanation for firing Ms. Johnson and shifts the burden back to Ms. Johnson to show that the reasons are merely pretext for discriminatory termination. *See Vasquez*, 349 F.3d at 640.

Defendant's explanation does not reach the issue of whether Ms. Enriquez made false statements about Ms. Johnson that caused Ms. Johnson to be fired. However, courts have refused to find a "genuine issue" of material fact where the only evidence presented is "uncorroborated and self-serving" testimony. *Kennedy*, 90 F.3d at 1481; *see generally Johnson v. Washington Metro. Transit Auth.*, 883 F.2d 125, 128 (D.C.Cir.1989) (discussing cases in which self-serving testimony uncorroborated by other evidence did not create a genuine issue of material fact). A fact issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby, Inc.*, 477 U.S. at 248.

Here, the Court must pit Ms. Johnson's bald assertion that Ms. Enriquez lied about her to Ms. Seykora against the deposition of Facility Manager Michael Perna and the affidavits of Ms. Seykora and Ms. Enriquez. Ms. Johnson has not even explained which of Ms. Enriquez's statements are supposedly untrue. (Doc. #36 at Exhibit 5, p. 84). In contrast, Ms. Enriquez laid out a number of reasons why Ms. Johnson was fired. (*Id.* at Exhibit 3). Likewise, Mr. Perna testified at his deposition that he observed Ms. Johnson violating hospital security protocol on the security tape. (*Id.* at Exhibit 2, pp. 32-33). As such, this Court concludes that no reasonable juror could find for Ms. Johnson, based on her uncorroborated and self-serving testimony, on the issue of whether Ms. Enriquez lied about her. *See Liberty Lobby, Inc.*, 477 U.S. at 248; *Kennedy*, 90 F.3d at 1481.

### 3. **Defendant's Explanations as Pretext for Discrimination**

Since Defendant has provided non-discriminatory explanations for both Ms. Johnson's prima facie claims, Ms. Johnson must now introduce evidence sufficient to raise a genuine issue of material fact as to whether Defendant's explanations are merely pretext for discrimination. *See Coleman*, 232 F.3d at 1282. Ms. Johnson has not introduced such evidence.

Ms. Johnson can show pretext "directly, by showing that discrimination more likely motivated the employer, or indirectly, by showing that the employer's explanation is unworthy of credence." *Vasquez*, 349 F.3d at 641. Direct evidence of discriminatory motive creates a triable issue as to the actual motivation of the employer even if the evidence is not substantial. *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1221 (9th Cir. 1998). "To show pretext using circumstantial evidence," on the other hand, "a plaintiff must put forward specific and substantial evidence challenging the credibility of the employer's motives." *Vasquez*, 349 F.3d at 641. Deviations from protocol and procedural irregularities can create an inference of pretext. *Porter v. Cal. Dep't of Corr.*, 419 F.3d 885, 896 (9th Cir. 2005). Ms. Johnson may not rest on mere denials of Defendant's explanations; rather, Ms. Johnson must assert specific facts that reflect a continuing existence of a dispute of genuine material fact. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324.

Ms. Johnson has not introduced any direct evidence of discrimination. She asserts that she "does not know why [D]efendant terminated her but believes that she was terminated because she is an African American female who attempted to assert her right of seniority." (Doc. #39 at ¶7). She admits that Ms. Seykora never called her a derogatory name. (Doc. #36 at Exhibit 5, p. 81). Instead, Ms. Johnson must rely on circumstantial evidence.

Ms. Johnson can overcome Defendant's non-discriminatory explanations for Ms. Seykora's conduct by "put[ting] forward specific and substantial evidence challenging the credibility of the employer's motives." *Vasquez*, 349 F.3d at 641. Ms. Johnson has not put forth such evidence. Ms. Johnson asserts that Defendant's reasons for terminating her are not allowed under the "union collective bargain handbook." (Doc. #39 at ¶4). If Defendant

- 15 -

did contravene the procedures laid out in this handbook, it might be evidence of pretext. *See Porter*, 419 F.3d at 896. Yet, there is no admissible evidence regarding the policies, or even the existence, of such a handbook.

Ms. Johnson also asserts that she is a naturally loud speaker. (Doc. #39 at ¶4). But this claim only bolsters Defendant's explanation that Ms. Seykora fired Ms. Johnson in part for acting belligerently around her superiors. (Doc. #36 at Exhibit 3). It does not provide any evidence that Ms. Seykora discriminated against Ms. Johnson based on race.

The remainder of Ms. Johnson's Opposition to Defendant's Motion for Summary Judgment consists of blanket denials and assertions of law. (Doc. #39). Ms. Johnson therefore has not met her burden of introducing evidence sufficient to raise a genuine issue of material fact as to whether the employer's reason was pretextual. *See Celotex*, 477 U.S. at 324; *Coleman*, 232 F.3d at 1282. Since there is no dispute about a genuine fact such that a reasonable jury could return a verdict for Ms. Johnson on her Title VII race discrimination claim, this Court grants summary judgment to Defendant on this claim. *See Liberty Lobby, Inc.*, 477 U.S. at 248.

### B.    42 U.S.C. § 1981

Ms. Johnson also asserts that Defendant violated her rights under 42 U.S.C. § 1981 based on the same set of facts. (Doc. #25 at ¶¶2, 10, 28). Claims under § 1981 are analyzed under the same legal principles as disparate treatment claims under Title VII. *Metoyer v. Chassman*, 504 F.3d 919, 930 (9th Cir. 2007); *Fonseca v. Sysco Food Servs. of Ariz., Inc.*, 374 F.3d 840, 850 (9th Cir. 2004). Both Title VII and § 1981 require proof of discriminatory treatment and the same set of facts can give rise to both claims. *Lowe v. City of Monrovia*, 775 F.2d 998, 1010 (9th Cir. 1985). Like Title VII cases, courts use the *McDonnell Douglas* burden shifting scheme in § 1981. *See Fonseca*, 374 F.3d at 850. Thus, the Court grants summary judgment under Fed. R. Civ. P. 56 to Defendant on Ms. Johnson's § 1981 claim for the same reasons provided in the analysis of Ms. Johnson's Title VII claim.

## C. Intentional Infliction of Emotional Distress

Ms. Johnson's final claim against Defendant is for intentional infliction of emotional distress ("I.I.E.D."). Although the Court construes all facts in the light most favorable to Ms. Johnson, the Court finds that no reasonable jury could return a verdict for Ms. Johnson on this claim. *See Liberty Lobby, Inc.*, 477 U.S. at 248.

To prove a claim of intentional infliction of emotional distress under Arizona law, Ms. Johnson must show that: 1) Defendant engaged in extreme and outrageous conduct; 2) Defendant either intended to cause emotional distress or recklessly disregarded the near certainty that emotional distress would result from the conduct; and 3) Ms. Johnson actually suffered severe emotional distress because of Defendant's conduct. *See Nelson v. Phoenix Resort Corp.*, 888 P.2d 1375, 1386 (Ariz. Ct. App. 1994). In determining whether Defendant's conduct was extreme and outrageous, courts have found that the conduct must be "extraordinary." *See Tempesta v. Motorola, Inc.*, 92 F. Supp. 2d 973, 986-97 (D. Ariz. 1999). The conduct must be, "so outrageous in character and so extreme a degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Mintz v. Bell Atl. Sys. Leasing, Int'l*, 905 P.2d 559, 563 (Ariz. Ct. App. 1995) (internal citations omitted).

Arizona cases that have held that a defendant's conduct is not sufficiently outrageous as a matter of law where the conduct is "premised upon actions that are routine in the employment context, such as hiring, firing, and promoting, even when taken for an unlawful purpose, or, in which the employer's actions, even if callous, were motivated by a legitimate business purpose." *Brands v. Lakeside Fire Dist.*, 2010 WL 2079712 *8 (D. Ariz. 2010) (J. Wake); *see also Wallace v. Casa Grande Union High Sch. Dist. No. 82 Bd. of Governors*, 909 P.2d 486, 495 (Ariz. App. 1995) (concerning employer who reduced employee's salary); *Bodette v. CoxCom*, 366 F.3d 736, 747 (9th Cir. 2004) (applying Arizona law) (concerning accusations of employee misconduct).

The Court finds that, as a matter of law, Ms. Seykora's conduct towards Ms. Johnson was not sufficiently extreme and outrageous to support an intentional infliction of emotional

distress claim.[5] To support her claim, Ms. Johnson testified that Ms. Seykora called her early in the morning to reduce her hours, watched her on the security cameras, constantly stood at her workplace and picked on her and eventually terminated her employment. (Doc. #36 at Exhibit 5, pp. 79, 83). Ms. Johnson testified that "[Ms. Seykora] was pointing on me. Every time I turn around, Linda right in my area." (*Id.*). She testified that she "could hear the yelling and screaming. . . it was awful." (*Id.* at Exhibit 5, p. 81). However, all these alleged actions pertain to legitimate business purposes. Employers must be able to monitor employees and reprimand them if they do not follow protocol without fear of tort liability. *See Bodette*, 366 F.3d at 747-748 (accusations of employee misconduct do not arise to I.I.E.D. even when those accusations are shown to be false). Likewise, employers must be permitted to alter employees' hours where necessary. *See Wallace*, 909 P.2d at 495 (affirming summary judgment on I.I.E.D. claim because changing plaintiff's duties and the reducing her salary were lawful and not outrageous). Since Ms. Seykora's conduct constituted a legitimate business purpose, the Court finds none of Ms. Seykora's alleged conduct towards Ms. Johnson rises to the level of extreme and outrageous.

Furthermore, Ms. Johnson cannot recover under an I.I.E.D. theory with regards to her termination because this Court has already found that Ms. Seykora terminated Ms. Johnson legally. *See Daniel v. Magma Copper Co.*, 620 P.2d 699, 703 (Ariz. App. 1980) ("Since [plaintiff's] termination was lawful, any recovery for intentional infliction of mental distress based upon the wrongful discharge must also fail."); *see also Mintz*, 905 P.2d 559, 562-64 (finding that termination decisions are generally insufficient to directly raise an I.I.E.D. claim and holding that defendant's failure to promote plaintiff did not rise to I.I.E.D., even where failure to promote was based on sex discrimination).

---

[5]Although the Court disposes of Ms. Johnson's I.I.E.D. claim on the extreme and outrageous prong, the Court is also skeptical that Ms. Johnson could prove the third I.I.E.D. prong which requires the plaintiff to have suffered severe emotional distress *because of Defendant's conduct*. *Nelson*, 888 P.2d at 1386 (emphasis added). Ms. Johnson testified at her deposition that she liked Ms. Seykora because she was tough. (Doc. #36 at Exhibit 5, p. 51). It therefore seems unlikely that Ms. Seykora caused Ms. Johnson's emotional distress.

- 18 -

Ms. Johnson has not established a prima facie case of intentional infliction of emotional distress because, even with all facts construed in favor of Ms. Johnson, none of Ms. Seykora's alleged actions were extreme and outrageous. Therefore, the Court grants summary judgement under Fed. R. Civ. P. 56 to Defendant on Ms. Johnson's intentional infliction of emotional distress claim.

## IV. Conclusion

Ms. Johnson has failed to show the existence of any genuine issues of material fact as to her Title VII race discrimination, 42 U.S.C. § 1981 race discrimination or intentional infliction of emotional distress. *Celotex*, 477 U.S. at 322. The Court therefore grants summary judgment for Defendant pursuant to Fed. R. Civ. P. 56(c) on all of Ms. Johnson's claims.

Accordingly,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment (Doc. #35) is granted.

**IT IS FURTHER ORDERED** that the Clerk shall enter Judgment for Defendant.

DATED this 20th day of July, 2010.

James A. Teilborg
United States District Judge